

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-23-00689-CV

**IN THE INTEREST OF A.T., JR.**, et al., Children

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2021-PA-00746
Honorable Linda Ann Rodriguez, Judge Presiding[1]

Opinion by:    Lori I. Valenzuela, Justice

Sitting:    Luz Elena D. Chapa, Justice
Beth Watkins, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: January 10, 2024

AFFIRMED

M.R. appeals the trial court's order terminating her parental rights to her children D.Y.R. (born 2007), V.C.M.R. (born 2015), and S.M.M.M. (born 2020).[2] M.R. argues (1) the evidence is legally and factually insufficient to support the trial court's findings under Texas Family Code section 161.001(b)(1)(E); (2) the evidence is legally and factually insufficient to support the trial court's finding that termination is in the best interest of the children; and (3) the trial court abused its discretion in making its conservatorship determination. We affirm.

---

[1] The order of termination was rendered by Judge Kimberly Burley.
[2] To protect the privacy of the minor children, we use initials to refer to the children and their biological parents. TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2). A fourth child, A.T., Jr., was dismissed from the suit.

## BACKGROUND

On April 28, 2021, the Texas Department of Family and Protective Services (the "Department") filed its original petition to terminate M.R.'s parental rights to the children. As a condition of reunification, the Department created a family service plan requiring M.R. to, inter alia, acquire and maintain stable employment to provide for the children's needs; provide verification of housing and employment; complete parenting and domestic violence classes; cooperate and comply with the criminal courts to resolve pending criminal charges; complete a psychosocial assessment and a psychological evaluation; attend and participate in individual counseling sessions; submit to a drug and alcohol assessment and follow recommendations; and submit to random drug testing. The Department ultimately pursued termination of M.R.'s parental rights.

On October 17, 2022 and November 4, 2022, the trial court held a two-day bench trial at which M.R. appeared. The trial court heard testimony from five witnesses: (1) M.R.; (2) the Department's caseworker, Christine Villarreal; (3) M.R.'s counselor, Victoria Caylor; (4) M.R.'s mother, R.L.; and (5) the children's foster parent, T.M. At the conclusion of trial, the court signed an order terminating M.R.'s parental rights pursuant to section 161.001(b)(1)(E), (O), and (P) and made a finding that termination of M.R.'s parental rights was in the best interest of the children. M.R. appealed.

## ANALYSIS

M.R. challenges the legal and factual sufficiency of the evidence supporting the trial court's findings under section 161.001(b)(1)(E); the legal and factual sufficiency of the evidence on which the trial court relied to conclude that termination was in the best interest of the children; and the trial court's conservatorship determination.

***Standard of Review***

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department has the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate M.R.'s parental rights and that termination was in the best interest of the children. TEX. FAM. CODE § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department presented clear and convincing evidence, a legal sufficiency review requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266. We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re R.S.-T.*, 522 S.W.3d 92, 98 (Tex. App.—San Antonio 2017, no pet.). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.F.C.*, 96 S.W.3d at 266. Nevertheless, "we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened

burden of proof by clear and convincing evidence." *In re S.L.M.*, 513 S.W.3d 746, 748 (Tex. App.—San Antonio 2017, no pet.). If a reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally sufficient. *Id.* at 747.

In contrast, in conducting a factual sufficiency review, we must review and weigh all the evidence, including the evidence that is contrary to the trial court's findings. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the challenged finding. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

In both legal and factual sufficiency review, the trial court, as factfinder, is the sole judge of the weight and credibility of the evidence. *In re A.F.*, No. 04-20-00216-CV, 2020 WL 6928390, at *2 (Tex. App.—San Antonio Nov. 25, 2020, no pet.) (mem. op.). We must defer to the factfinder's resolution of disputed evidentiary issues and cannot substitute our judgment for that of the factfinder. *See, e.g.*, *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

### *Statutory Termination Grounds*

#### *Applicable Law*

In her first argument on appeal, M.R. challenges the legal and factual sufficiency of the evidence to support the trial court's predicate finding under subsection (E). When, as here, the trial court terminates a parent's rights on multiple predicate grounds, we may affirm on any one ground. *In re A.V.*, 113 S.W.3d at 362; *In re D.J.H.*, 381 S.W.3d 606, 611–12 (Tex. App.—San Antonio 2012, no pet.).

In general, assuming a best interest finding, only one predicate ground under section 161.001(b)(1) is sufficient to support a judgment of termination. *In re A.V.*, 113 S.W.3d at 362; *In re A.R.R.*, No. 04-18-00578-CV, 2018 WL 6517148, at *1 (Tex. App.—San Antonio Dec. 12, 2018, pet. denied) (mem. op.). To be successful on appeal, an appellant must challenge all the predicate grounds upon which a trial court based its termination order. *In re S.J.R.-Z.*, 537 S.W.3d at 682. When an appellant does not challenge all the grounds that may support an order of termination, we typically do not address the sufficiency of the evidence of any of the predicate grounds for termination. *See In re A.V.*, 113 S.W.3d at 361–62; *In re S.J.R.-Z.*, 537 S.W.3d at 682. Instead, we must accept the validity of the unchallenged grounds and affirm the termination order. *See In re A.V.*, 113 S.W.3d at 361–62; *In re S.J.R.-Z.*, 537 S.W.3d at 682.

However, because termination under subsection 161.001(b)(1)(D) or (E) may have implications for a parent's parental rights to other children, appellate courts are instructed to address issues challenging a trial court's findings under those subsections. *In re N.G.*, 577 S.W.3d 230, 236–37 (Tex. 2019). Therefore, we will consider M.R.'s sufficiency argument as to subsection (E) even though she does not challenge termination under subsections (O) (failure to comply with the provisions of a court-ordered service plan) and (P) (use of a controlled substance in a manner that endangers health or safety of the child). *See In re L.C.*, No. 12-19-00137-CV, 2019 WL 4727826, at *2 (Tex. App.—Tyler Sept. 27, 2019, no pet.) (mem. op.) (addressing parents' sufficiency challenges to subsections (D) and (E) even though they did not challenge all grounds upon which termination could be supported).

Subsection (E) allows a trial court to terminate a parent's rights if it finds by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(E). Under subsection (E), the trial court determines

whether there is evidence that a parent's acts, omissions, or failures to act endangered the child's physical or emotional well-being. *See In re J.T.G.*, 121 S.W.3d at 125. "It is not necessary that the parent's conduct be directed at the child or that the child actually be injured; rather, a child is endangered when the environment or the parent's course of conduct creates a potential for danger which the parent is aware of but disregards." *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Courts may further consider parental conduct that did not occur in the child's presence, including conduct before the child's birth or after the child was removed from a parent's care. *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *4–5 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.).

*Application*

The Department's primary concerns in seeking termination of M.R.'s parental rights were M.R.'s use of illegal drugs; her ex-boyfriend's use of drugs and alleged sexual abuse against D.Y.R. and V.C.M.R.; and M.R.'s inability to comply with her court-ordered service plan. M.R. argues there was not sufficient evidence that she engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children. In support of her argument, M.R. asserts that she broke up with her boyfriend before S.M.M.M.'s birth; she tried to find a caretaker for the children when she was arrested; she has appeared at every hearing in this case; and she completed most of the requirements of her service plan.

At trial, M.R. blamed S.M.M.M.'s father and her ex-boyfriend, Jarek O.K., for many of the problems relating to drug use in her home. According to M.R., she broke up with him prior to S.M.M.M.'s birth because she did not want any drug use in her home, and he was using illegal drugs and being irresponsible. However, on the day the children were originally removed, M.R. agreed to use her vehicle to help Jarek O.K. move his belongings from his hotel to another location.

According to M.R., he took her car keys from her purse and took off in her vehicle. She called the police to report that her car had been stolen. The police arrived at the apartment at around 8 a.m., and during that call, M.R. was arrested. Because M.R. could not locate a caretaker for the children, they were temporarily placed in the Department's custody until her release a day later.

M.R.'s family plan, which was admitted into evidence, states she admitted to taking unprescribed Xanax while pregnant. S.M.M.M.'s meconium tested positive for methamphetamines at birth. M.R. testified she was never tested when she had S.M.M.M. However, a urinalysis performed at delivery confirmed M.R. and S.M.M.M. were both positive for amphetamines.

On May 19, 2021, M.R. tested positive for marijuana, amphetamines, and methamphetamines following a hair follicle test. On May 27, 2022, M.R. completed a drug treatment program through Lifetime Recovery. However, on July 7, 2022, M.R. subsequently tested positive for methamphetamines on a hair follicle test, and according to the caseworker, on August 8, 2022, M.R. admitted to using methamphetamines. On September 26, 2022, M.R. again tested positive.

In addition to continued illegal drug abuse, M.R. failed to finish her required counseling under her service plan. *See In re A.L.S.*, 660 S.W.3d 257, 273 (Tex. App.—San Antonio 2022, pet. denied) (finding endangerment, in part, because appellant did not finish the service-plan mandated counseling and continued to use drugs in violation of the service plan).

Before removal, M.R. reported concerns that Jarek O.K. (S.M.M.M.'s father) was sexually abusing V.C.M.R. Although M.R. reported suspected sexual abuse, the caseworker testified that M.R. continued to allow Jarek O.K. entry into the home. After removal, D.Y.R. and V.C.M.R. alleged Jarek O.K. sexually abused them before removal. The caseworker testified that when she discussed D.Y.R.'s outcry with M.R., M.R. called D.Y.R. a liar and stated that she just wanted

attention. According to the caseworker, M.R. refused to acknowledge D.Y.R.'s allegations—both that Jarek O.K. sexually assaulted her and that D.Y.R. witnessed M.R. doing drugs in their home. M.R. refused to allow D.Y.R. to engage in trauma informed therapy to address Jarek O.K.'s alleged sexual abuse.

After reviewing the evidence under the appropriate standards of review, we conclude that a factfinder could reasonably have formed a firm belief or conviction that M.R. engaged in conduct (e.g., prolonged illegal drug use, including during her pregnancy with S.M.M.M.) or knowingly placed the children with persons who engaged in conduct (e.g., allowing Jarek O.K. to remain in the home after allegations that he sexually abused V.C.M.R.) which endangers the physical or emotional well-being of the children. Moreover, we must accept the validity of the unchallenged grounds under subsections (O) and (P) and affirm the termination order on those predicate grounds. *See In re A.V.*, 113 S.W.3d at 361–62; *In re S.J.R.-Z.*, 537 S.W.3d at 682. We overrule M.R.'s first issue.

### *Best Interest*

### *Applicable Law*

Next, M.R. challenges the legal sufficiency of the trial court's order that termination of her parental rights was in the best interest of the children. There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d at 97. To determine whether the Department satisfied this burden, the Texas Legislature has provided several factors[3] for courts to consider regarding a parent's

---

[3] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department;

willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has provided a similar list of factors[4] to determine a child's best interest. TEX. FAM. CODE § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at \*5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at \*3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). "A trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). This conduct can include drug use, which can destabilize the home and expose children to physical and emotional harm if not resolved. *See, e.g.*, *In re K.J.G.*, 2019 WL 3937278, at \*8. In analyzing these factors, the court must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective &*

---

(5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[4] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

*Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). Evidence that proves a statutory ground for termination is also probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

*Application*

In her second argument on appeal, M.R. challenges the legal and factual sufficiency of the evidence to support the trial court's best interest finding.

*Desires of the Children*

At the time of trial, D.Y.R. was fifteen years old, and V.C.M.R. was seven years old. D.Y.R. expressed her desire to both her foster mother, T.M., and the caseworker that she be adopted. D.Y.R. refers to T.M. as "mom," and the two are well-bonded. V.C.M.R. also "articulated that she wanted to be adopted and stay with" D.Y.R. in their foster home. S.M.M.M. was removed from her mother's care when she was five months old. At the time of trial, S.M.M.M. was one year old and was incapable of expressing her desires. However, the trial court could have considered that S.M.M.M. is bonded with the foster family, is well-cared for by them, and has spent minimal time with a parent. *See In re J.M.G.*, 608 S.W.3d 51, 57 (Tex. App.—San Antonio 2020, pet. denied).

The trial court could have weighed this factor in favor of termination.

*Emotional and Physical Needs and Emotional and Physical Danger to the Children*

As discussed above, both M.R. and S.M.M.M. tested positive for methamphetamines at S.M.M.M.'s birth. D.Y.R. told her caseworker that she witnessed M.R. doing drugs in the home. Moreover, M.R. continuously tested positive for drugs during the proceedings, including after she completed a drug treatment program. Although there is evidence that M.R. at times decreased use of methamphetamines, and tested negative on September 26, 2022, given M.R.'s relapses and her failure to acknowledge ongoing drug use while she continued to test positive, the trial court could

have believed that M.R.'s drug use remained unresolved. An unresolved history of drug abuse exposes the children to danger, potentially destabilizes the home, and exposes children to physical and emotional harm. *See, e.g.*, *In re K.J.G.*, 2019 WL 3937278, at *8.

Additionally, the trial court could have believed that M.R. had not, and would not, protect the children from Jarek O.K. Although M.R. reported suspected sexual abuse by Jarek O.K. against V.C.M.R. to her caseworker, she continued to allow Jarek O.K. entry into the home. M.R. expressed her belief that D.Y.R. lied about Jarek O.K.'s sexual abuse against her, stated D.Y.R. just wanted attention, and refused to allow D.Y.R. to engage in trauma informed therapy to address Jarek O.K.'s alleged sexual abuse.

The trial court could have weighed this factor in favor of termination.

*M.R.'s Parental Abilities*

In addition to prolonged drug abuse, testimony elicited at trial exposed M.R.'s lack of parental abilities. The Department initially referred M.R. for counseling to Caylor. Based on the referral, Caylor believed M.R. required counseling for "bipolar issues, adjustment disorder, personality issues, substance abuse issues, parenting issues, domestic violence, decision-making, accountability and responsibility." M.R.'s psychosocial assessment revealed bipolar, adjustment, personality, substance abuse, domestic violence, and parenting issues.

However, these issues remained unaddressed because M.R. was repeatedly discharged from counseling. Her discharges were due to her inability to consistently attend appointments and consequent inability to make any progress. Specifically, M.R. attended eleven out of twenty-four scheduled sessions. Although M.R.'s counseling visits were too infrequent for Caylor to opine on whether M.R. took any responsibility for the removal of her children, she described M.R.'s thought processes as "somewhat chaotic, angry, and aggressive. She blamed others for her situation." The trial court could have viewed this assessment as particularly credible given M.R.'s repeated

outbursts during trial. M.R. was referred to a second counselor, Tricia Boone, but was unsuccessfully discharged after missing the first two scheduled appointments.

The trial court could have weighed this factor in favor of termination.

*Programs Available to Promote the Best Interest of the Children*

M.R. completed many of the programs required by her service plan. However, she was repeatedly discharged from counseling. She also tested positive for methamphetamines after completing the drug treatment program, and she failed to attend aftercare classes designed to help avoid relapse. Her caseworker testified she did not have proof that M.R. completed parenting classes. As to the efficacy of the programs, the caseworker stated, "[A]lthough she engaged in services, I believe that it's been used as a checklist. She [ha]s been combative throughout the entirety of the case; has failed to really address any of the issues of concerns [sic]; still engages in drug usage; does not have stable employment; has significant concern with her mental health; does not have a protective and stable home . . ."

The trial court could have believed M.R. did not benefit from access to programs, including those that she completed, and it consequently could have weighed this factor in favor of termination.

*M.R.'s Plans for the Children*

M.R. testified that she planned to enroll the children in school, provide love and support, and live with her mother, R.L., until she could secure independent living.

R.L. testified she was surprised there were allegations of sexual abuse by Jarek O.K., they were proven in court to be a lie, and she did not believe the allegations. She further testified that she left the children alone with M.R. and Jarek O.K. at a time such action was prohibited by the children's safety plan. On this point, the caseworker testified, "[R.L.] was the safety plan at the beginning of this case. She -- the children were removed because she admitted to knowing that

[M.R.] was using methamphetamines and still allowed her unlimited access to the children. She has a lack of protective capacity."

The trial court could have rationally concluded M.R.'s stated plan to move her children in with R.L. was not a plan that would ensure the protection of the children and weighed this factor in favor of termination.

*Stability of Home or Proposed Placement*

The trial court could have believed M.R. could not provide a stable home for three reasons. First, M.R. resided with her mom throughout most of the case and stated her intent to move the children in with R.L., who apparently resided in a one-bedroom apartment. Second, during the case, M.R. was incarcerated three times. The first two times she was out within a day, and on the third time, she was incarcerated for approximately two and a half weeks. At trial, she remained on probation for evading arrest. Third, during the proceedings, M.R. was unable to provide the caseworker with evidence of stable employment. The trial court could have believed M.R. could not provide a safe and stable home because she was unable to secure independent living or prove stable employment.

The children's foster mother, T.M., testified she had been D.Y.R.'s foster mom since August 2021, and S.M.M.M. and V.C.M.R.'s foster mom since August 2022. While under T.M.'s care, D.Y.R. has engaged in weekly trauma informed therapy and maintained grades as a straight A student. T.M. stated V.C.M.R. was "doing great" and that she is "fully committed to providing [the children] with permanency. . . . That means that we are committed to protecting them; providing them love, care and support. And providing them a safe space to thrive."

The trial court could have weighed this factor in favor of termination.

*M.R.'s Acts or Omissions Indicating Parent-Child Relationship is Not Proper*

T.M. testified that it "took a year of therapy for [the eldest child, D.Y.R.,] to be able to remove herself from the maternal role and be able to be in a sibling role." Similarly, she testified V.C.M.R. had to adjust to seeing D.Y.R. as her sister and not a mother figure. Moreover, D.Y.R. expressed a desire not to have a continued relationship with M.R. The trial court could have believed M.R.'s drug abuse resulted in improper parent-child relationships and weighed this factor in favor of termination.

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of M.R.'s parental rights was in the best interest of her children. *In re J.F.C.*, 96 S.W.3d at 266. We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule M.R.'s arguments to the contrary.

### *Conservatorship*

In her third argument on appeal, M.R. challenges the trial court's conservatorship determination on the basis that conservatorship should be reconsidered where a trial court's termination order is reversed on appeal. But because this argument requires M.R. to prevail on one of her other two issues, and because we have overruled those issues, we overrule her final issue.

### CONCLUSION

Based on the foregoing, we affirm the trial court's order of termination.

Lori I. Valenzuela, Justice